# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RICHARD DALE CRAWFORD,                    Case No. 1:13-cv-451
     Plaintiff,                               Dlott, J.
                                          Litkovitz, M.J.

     vs.

COMMISSIONER OF                           **REPORT AND**
SOCIAL SECURITY,                          **RECOMMENDATION**
     Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 14), the Commissioner's response in opposition (Doc. 21), and plaintiff's reply memorandum (Doc. 25), and on plaintiff's motion to remand (Doc. 26) and the Commissioner's memorandum in opposition (Doc. 31).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI in September 2009, alleging disability since September 1, 2006, due to HIV infection with HIV wasting syndrome, intellectual impairment with depression, psoriasis, and a cognitive disorder. These applications were denied initially and upon reconsideration. Plaintiff requested and was granted a *de novo* hearing before administrative law judge (ALJ) Curt Marcielle. Plaintiff appeared at the ALJ hearing with counsel, and both plaintiff and a vocational expert (VE) testified at the ALJ hearing. On November 14, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ

the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A)

(DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the

work previously performed or in any other substantial gainful employment that exists in the

national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)

(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The [plaintiff] has not engaged in substantial gainful activity since September 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: HIV; depression; anxiety disorder NOS; personality disorder; polysubstance abuse; borderline intellectual functioning; and history of alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is limited to simple, routine, repetitive work with occasional decision-making and workplace changes. He can have occasional interaction with coworkers and supervisors but no interaction with the public. The work should not require travel to unfamiliar places.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

---

[1] Plaintiff's past relevant work was as a donut shop baker and maintenance worker. (Tr. 25).

7. The [plaintiff] was born [in] . . . 1961 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 5, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-27) (internal footnote omitted).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform light jobs such as vending attendant, cleaner, and laundry sorter and sedentary jobs such as document preparer, assembler, and addresser.  (Tr. 26).

evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

## III.  This matter should be remanded for further proceedings under Sentence Six of 42 U.S.C. § 405(g).

Plaintiff seeks a remand under Sentence Six of 42 U.S.C. § 405(g) for administrative consideration of new and material evidence submitted in connection with an SSI application he filed after the ALJ hearing in this matter. This new evidence is a report from Thomas L. Heiskell, Ph.D., a psychologist who examined plaintiff in 2013 at the request of the Social Security Administration. (Doc. 26, Ex. 2). Dr. Heiskell performed intellectual functioning testing which suggests that plaintiff meets Listing 12.05 for intellectual disability.

Dr. Heiskell had previously examined plaintiff in connection with his 2009 disability application, which is at issue in this case. (Tr. 346-351). When Dr. Heiskell initially examined plaintiff on December 23, 2009, he diagnosed anxiety disorder, NOS, polysubstance dependence

in reported remission, borderline intellectual functioning by clinical impression, and personality disorder.  (Tr. 346-350).  Dr. Heiskell opined that plaintiff's ability to understand and follow instructions was moderately limited; his ability to maintain attention to perform simple, repetitive tasks was not impaired by psychological factors; his ability to relate to others, including fellow workers and supervisors, was slightly limited; and his ability to withstand the stress and pressures associated with day-to-day work activity was slightly limited.  (Tr. 350).  Dr. Heiskell did not have plaintiff's school records at that time, nor did he perform any intellectual testing during his examination of plaintiff.  The ALJ relied, in part, on Dr. Heiskell's examination to find plaintiff was not disabled.

Dr. Heiskell performed a second consultative examination of plaintiff on August 22, 2013.  This time, he reviewed his previous 2009 evaluation of plaintiff and plaintiff's school records, which included IQ testing from age nine showing a Stanford Binet IQ of 57 and a standard score of 84 on the Draw a Man Test.  Dr. Heiskell performed WAIS IV testing and reported that plaintiff's full scale IQ was 62, which he considered "valid, and compare[s] very closely to results obtained by [the school psychologist] when the claimant was a child."  (Doc. 26, Exh. 2 at 6).  Dr. Heiskell further opined that the test results "are consistent with his falling descriptively in the mildly retarded range, that also being supported by his overall limited adaptive functioning and limited reading and math skills."  *Id*.  Dr. Heiskell reported plaintiff's "WAIS IV Full Scale IQ of 62 and his overall limited adaptive functioning are consistent with a diagnosis of mild mental retardation and are very consistent with his previous intellectual assessment results."  *Id*. at 7.

Plaintiff requests a Sentence Six remand based on Dr. Heiskell's 2013 report.  Plaintiff

6

argues this evidence is new as it was not in existence at the time of the previous ALJ hearing and demonstrates that he meets Listing 12.05B and 12.05C for intellectual disability.

The Commissioner contends that even if this evidence is new, it is not material and does not support a remand under Sentence Six. The Commissioner notes that Dr. Heiskell did not reconcile his current testing and diagnosis of mental retardation with his 2009 examination of plaintiff, which indicated plaintiff's intellectual functioning fell in the borderline range. (Tr. 22, 348-49). The Commissioner also argues that Dr. Heiskell's examination findings and resulting opinion were rendered almost two years after the ALJ's determination, and plaintiff has not established good cause for failing to incorporate such evidence into the administrative record at the prior proceeding.

Listing 12.05 contains an introductory paragraph with the diagnostic description of "intellectual disability" and four sets of criteria set forth in paragraphs (A)-(D). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Listing 12.05 provides in relevant part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet Listing 12.05 for intellectual disability, the impairment must satisfy both the

diagnostic description and any one of the four sets of criteria. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)). In satisfying the diagnostic description for intellectual disability, a claimant must demonstrate: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) such deficits in adaptive functioning initially manifested before age 22. *Id.* "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). *See also Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) ("The American Psychiatric Association defines adaptive-skills limitations as '[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'") (quoting Diagnostic and Statistical Manual of Mental Disorders, p. 49 (4th ed. 2000)).

The Court finds plaintiff's request to be well-taken and that a remand under Sentence Six is appropriate in this case. "The district court can . . . remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding. *Foster*, 279 F.3d at 357. Evidence is considered "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citations and internal quotation marks omitted). To show "good cause" the

moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Id. See also Oliver v. Sec'y of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis v. Sec. of H.H.S.,* 727 F.2d 551, 554 (6th Cir. 1984).

Dr. Heiskell's August 2013 examination findings and report were not in existence at the time of the ALJ hearing. Therefore, these records constitute new evidence for purposes of plaintiff's request for a Sentence Six remand. *Foster*, 279 F.3d at 357.

The evidence is also material because it shows that the IQ testing results in 2013 were consistent with the IQ results plaintiff obtained as a child, which place him in the mentally retarded range of intellectual functioning. Because the ALJ never considered whether plaintiff met or equaled Listing 12.05 for intellectual disability (Tr. 15-17), the results obtained by Dr. Heiskell are material to plaintiff's disability claim. If credited, Dr. Heiskell's 2013 opinion that plaintiff's IQ testing and adaptive functioning are consistent with mental retardation, when considered in conjunction with plaintiff's other severe physical and mental impairments, strongly suggests a finding of disability under Listing 12.05C. The Commissioner is correct that Dr. Heiskell did not "reconcile" his 2009 finding of borderline intellectual functioning with his 2013 diagnosis of mental retardation. However, the new evidence plaintiff presents is material even though Dr. Heiskell did not explicitly "reconcile" his 2009 and 2013 reports. It is clear that Dr. Heiskell did not have plaintiff's school records and IQ test results from age nine and he did not perform any intelligence testing when he assessed borderline intellectual functioning in 2009. Plaintiff's school records and earlier IQ results, when considered in conjunction with the IQ testing Dr. Heiskell performed in 2013, strongly support his conclusion that plaintiff actually functions in the mentally retarded range of intelligence.

The Court also finds good cause for a Sentence Six remand.  The August 2013 report from Dr. Heiskell was not available at the ALJ hearing.  *See Fazio v. Heckler*, 750 F.2d 541, 542-543 (6th Cir. 1984) ("Good cause" exists because this evidence was simply not available at the ALJ hearing."); *Wilson v. Sec'y of H.H.S.,* 733 F.2d 1181, 1182-83 (6th Cir. 1984) (same). In addition, it is not clear why Dr. Heiskell was not asked to perform intelligence testing when he examined plaintiff in 2009.  Had such testing been requested and performed, it would have likely altered the outcome in this case.  Plaintiff has no control over the type of psychological examination administered as part of consultative exams procured by the Commissioner and should not be faulted for the Commissioner's failure to request the performance of IQ testing at the earlier examination.  Thus, good cause exists for a Sentence Six remand in this matter for consideration of the new and material evidence.

Accordingly, a remand pursuant to Sentence Six of 42 U.S.C. § 405(g) for further administrative proceedings in light Dr. Heiskell's August 2013 report is warranted.  Plaintiff's request for a Sentence Six remand should be granted.

## IV.  Plaintiff's Assignment of Errors

On appeal, plaintiff argues that: (1) the ALJ erred by not considering whether plaintiff met Listings 12.05B or C; (2) the ALJ erred by finding plaintiff did not meet Listing 14.08K for HIV infection; (3) the ALJ erred by not accounting for all of plaintiff's mental limitations in the hypothetical question presented to the VE; and (4) the ALJ erred in weighing the opinion of plaintiff's treating physician.  (Doc. 14).

10

**A.  Whether the ALJ erred by not considering whether plaintiff met Listing 12.05.**

Plaintiff alleges the ALJ erred by failing to consider whether plaintiff met Listing 12.05B or C.  Plaintiff cites to the school psychology report showing an IQ score of 57 at age nine (Tr. 224); records establishing he was in special education classes (Tr. 223-230); a report from his treating physician, Ellis Frazier, M.D., who stated plaintiff had "mild mental retardation/developmental delay and depressive symptomatology" (Tr. 399); and evidence showing he suffers from additional severe physical and mental impairments.  The Commissioner admits the ALJ did not expressly discuss Listing 12.05B or 12.05C, but contends any error in this regard is harmless.  (Doc. 21 at 7-8).

In light of the Court's recommendation that this matter be remanded pursuant to Sentence Six of § 405(g) to determine whether plaintiff meets or equals Listing 12.05, the Court need not resolve this assignment of error as the outcome would be the same – remand for further proceedings and consideration of whether plaintiff meets or equals Listing 12.05 for intellectual disability.

**B.  Whether the ALJ erred by finding plaintiff did not meet Listing 14.08K.**

Plaintiff argues the ALJ erred by finding plaintiff did not meet Listing 14.08 for HIV. The ALJ determined that plaintiff did not meet Listing 14.08 for HIV infection because the record lacked any evidence of bacterial, fungal, protozoan/helminthic or viral infections.  (Tr. 16).   The ALJ also noted there was no evidence of malignant neoplasms or conditions of the skin or mucous membranes with extensive fungating or ulcerating lesions.  (Tr. 16).  The ALJ also found that the record reflected no evidence of HIV encephalopathy characterized by cognitive or motor dysfunction or HIV wasting syndrome or repeated manifestations of HIV

11

infections. (Tr. 16). Finally, the ALJ noted the state agency physicians opined that plaintiff did not meet or equal a listed impairment. (Tr. 16).

Listing 14.08K requires the following:

**Listing 14.08 Human immunodeficiency virus (HIV) infection.** With documentation as described in 14.00F and one of the following:

K. Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.08A-J, but without the requisite findings for those listings (for example, carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08I), or other manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis, hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness, cognitive or other mental limitation) resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level:

      1. Limitation of activities of daily living.
      2. Limitation in maintaining social functioning.
      3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 14.08K, Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P. App. 1. Listings 14.08A through 14.08J, which are cross-referenced in Listing 14.08K, include impairments such as bacterial infections, fungal infections, protozoan or helminthic infections, viral infections, malignant neoplasms, conditions of the skin or mucous membranes with extensive fungating or ulcerating lesions not responding to treatment, HIV encephalopathy, HIV wasting syndrome, and diarrhea lasting for one month or longer which is resistant to treatment.

Plaintiff argues he meets Listing 14.08K because the record documents the existence of HIV and his testimony corroborates his severe limitations in cognitive functioning and completing tasks in a timely fashion. (Doc. 14 at 9). Plaintiff also asserts the medical

assessments and treatment notes of his treating physician, Dr. Frazier, corroborate his mental and physical limitations. *Id.*

Listing 14.08K requires not only the existence of HIV, but *repeated* manifestations of HIV infection such as those set forth in Listing 14.08A through 14.08J. Plaintiff has not addressed the Listing 14.08A through 14.08J manifestations of HIV or the other manifestations of the disease, *e.g.,* oral hairy leukoplakia or myositis, which result in significant, documented symptoms or signs, or shown how he satisfies this requirement of Listing 14.08K. In the absence of any such showing, the Court determines the ALJ did not err by finding that plaintiff did not meet or equal Listing 14.08K.

**C. Whether the ALJ erred by failing to account for all of plaintiff's mental limitations in the hypothetical posed to the VE.**

Plaintiff asserts the ALJ failed to account for his moderate difficulties in maintaining concentration, persistence, and pace in the RFC finding and in the hypothetical question presented to the VE. (Doc. 14 at 2-3). Plaintiff contends the ALJ was therefore not entitled to rely on the VE's testimony to find plaintiff could perform a significant number of jobs. The Commissioner argues that the ALJ accounted for plaintiff's severe mental impairments and accompanying limitations by restricting him to simple, routine, repetitive work; only occasional decision-making and workplace changes; only occasional interactions with co-workers and supervisors and no interaction with the public; and no travel to unfamiliar places. (Doc. 21 at 15-16).

Consistent with the opinions of the non-examining state agency psychologists, Drs. Benninger and Waggoner (Tr. 366, 378), the ALJ determined that plaintiff has moderate limitations in his ability to maintain concentration, persistence or pace. (Tr. 16). Yet, the ALJ's

RFC formulation and hypothetical to the VE, which limit plaintiff "to simple, routine, repetitive work with occasional decision-making and workplace changes" (Tr. 18), fail to accommodate plaintiff's moderate limitations in concentration, persistence or pace in accordance with Sixth Circuit precedent.

A VE's testimony does not constitute substantial evidence if the hypothetical does not adequately describe the claimant's physical and mental limitations. *Lancaster v. Commissioner of Social Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007). *See also Renn v. Commissioner of Social Sec.*, No. 1:09-cv-319, 2010 WL 3365944, at *6 (S.D. Ohio August 24, 2010) (Beckwith, S.J.). The Sixth Circuit has recognized that a VE's conclusion based on a hypothetical which fails to include a claimant's restrictions in concentration, persistence or pace does not serve as substantial evidence of the claimant's ability to work. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010). *See also Edwards v. Barnhart*, 383 F. Supp.2d 920, 930-31 (E.D. Mich. 2005) (ALJ's hypothetical question to VE precluding all but "simple, routine, unskilled work" failed to account for moderate limitations in persistence and pace) (cited with approval in *Ealy*). This Court has likewise recognized that a hypothetical for simple, routine jobs fails to account for moderate deficits in memory, attention, concentration, and pace. *See Renn*, 2010 WL 3365944, at *6. *See also Ball v. Comm'r of Soc. Sec.*, No. 1:09-cv-684, 2011 WL 765978, at *4 (S.D. Ohio Feb. 25, 2011) (Beckwith, S.J.) (recognizing Sixth Circuit authority that hypothetical omitting critical speed-based and pace-based restrictions failed to properly and fully describe the plaintiff's RFC limitations); *Herriman v. Apfel,* No. 99-cv-73489, 2000 WL 246598, at **2-3 (E.D. Mich. Feb. 11, 2000) (hypothetical limiting the plaintiff to simple unskilled work with limited contact with the public constituted error because it failed to take into account the

14

plaintiff's deficiencies in concentration);  *Falconi v. Comm'r of Soc. Sec.*, No. 1:08cv622, 2009 WL 3790176, at *10 (S.D. Ohio Nov. 11, 2009) (limitations that the plaintiff was able to "perform simple, routine, repetitive work in a low stress environment with no strict production requirement" did not adequately address the limitation of "ability to complete a normal workday, to maintain attention and concentration for extended periods, and to work within a schedule and maintain regular attendance.").

Based on the precedent cited above, the Court finds the ALJ's hypothetical question to the VE in the present case failed to accurately summarize plaintiff's mental limitations.  The hypothetical included a restriction for "simple, routine, repetitive work with occasional decision-making and workplace changes," but it did not account for plaintiff's moderate limitations in concentration, persistence and pace that the ALJ found were supported by the record.  Thus, the ALJ erred at Step 5 of the sequential evaluation process by relying on the VE's vocational testimony.  *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments).  Because the ALJ's hypothetical question failed to accurately portray plaintiff's mental impairment limitations, the VE's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the work identified by the VE.  Therefore, plaintiff's assignment of error should be sustained.

### D.  Whether the ALJ erred in weighing the opinion of plaintiff's treating physician.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight

than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6);

*Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)(1)).[3] *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 (1996)). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

Plaintiff's treating family doctor, Ellis Frazier, M.D., has treated plaintiff since September 2009. From a physical standpoint, Dr. Frazier assessed that plaintiff was able to perform less than sedentary work: he was able to lift and carry up to 20 pounds only occasionally and he was able to sit, stand and walk for less than two hours per day. (Tr. 380-81). The ALJ declined to give Dr. Frazier's opinion controlling weight because it was "not well supported and not consistent with the evidence." (Tr. 22). Instead, the ALJ gave Dr. Frazier's assessment "little weight" because it was documented on a standard check-in-the-box questionnaire without much narrative explanation and Dr. Frazier appeared to rely on plaintiff's subjective reports rather than objective evidence. The ALJ also noted that Dr. Frazier's narrative statement that the

---

[3] Title 20 C.F.R. §§ 404.1527, 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d) and 416.927(d) are now found at §§ 404.1527(c), 416.927(c).

"issue is that of cognitive delay" because "intellectually he is limited . . . he cannot understand things then he gets overwhelmed, frustrated, and depressed" is outside of Dr. Frazier's area of expertise as a family doctor.  (Tr. 22-23, citing Tr. 385).  Similarly, the ALJ noted there was no intellectual testing or evaluation administered by Dr. Frazier that would support Dr. Frazier's opinion that plaintiff exhibited "mild mental retardation/developmental delay and depressive symptomatology" or that he was qualified to render such an opinion.  (Tr. 23, citing Tr. 483, 487, 494).

Plaintiff argues the ALJ erred by not adopting Dr. Frazier's functional capacity assessment.  First, plaintiff states the ALJ gave great weight to the non-examining state agency physician because there was "no contrary opinion in the file," which was incorrect given Dr. Frazier's assessment.  (Doc. 14 at 6, citing Tr. 16).  The Court disagrees.  The ALJ's statement quoted by plaintiff actually refers to a comment made by the ALJ in his Listing analysis, and not in his RFC analysis as plaintiff suggests.  The ALJ accurately noted that the state agency physician concluded that plaintiff's HIV infection did not meet or equal a Listing, a conclusion to which the ALJ gave great weight because no other physician had opined that plaintiff met Listing 14.08 for HIV infection.  (Tr. 16).  Therefore, plaintiff's argument is not well-taken.

Second, plaintiff alleges that the ALJ should not have given great weight to the state agency physician because that physician relied on an incomplete record and did not have the records subsequent to February 2010, including records showing that plaintiff was diagnosed with AIDs-related phimosis[4], Dr. Frazier's mental RFC, and plaintiff's most recent blood work showing a fluctuating viral load with consistently low CD4 helper values despite medication

---

[4] Phimosis is the inability to retract the distal foreskin behind the glans in males.  *See* http://emedicine. medscape.com/article/777539-overview (last accessed on Nov. 6, 2014).

therapy.  (Doc. 14 at 7).  Yet, plaintiff has failed to explain how this additional evidence supports

Dr. Frazier's finding of a more restrictive functional capacity.  Plaintiff has not pointed to any

evidence showing that phimosis or the results of more recent blood work limit his ability to

perform the functional requirements of light work.  Nor does plaintiff address the ALJ's reasons

for giving little weight to Dr. Frazier's physical functional assessment.  As the ALJ reasonably

noted, Dr. Frazier did not specify the evidence he relied upon in assessing plaintiff's inability to

sit, stand, or walk for more than two hours in an eight-hour workday.  Instead, Dr. Frazier

repeatedly noted that it is plaintiff's limited intellectual functioning and cognitive delays that

render him disabled.  (*See* Tr. 480; *see also* Tr. 431: "main issue is his limited intellectual

functioning").  Nor is it apparent how plaintiff's limited intellectual functioning or cognitive

impairments affect his ability to perform physical work activities.  Although plaintiff has been

diagnosed with HIV/AIDS, Dr. Frazier has not identified the clinical or objective findings that

would support the extreme physical limitations he imposed.  For these reasons, the ALJ did not

err in giving little weight to Dr. Frazier's physical functional capacity assessment.

In terms of plaintiff's mental functional capacity, Dr. Frazier opined that plaintiff was

extremely impaired (*i.e.,* no useful ability to function) in his ability to make judgments on simple

work-related decisions; understand, remember, and carry out complex instructions; and interact

appropriately with the public and supervisors and respond appropriately to usual work situations

and to changes in a routine work setting.  (Tr. 533-34).  The ALJ gave little weight to Dr.

Frasier's assessment of plaintiff's mental functional capacity because it was made on a standard

form questionnaire without much explanation; there was no evidence Dr. Frazier was qualified to

render an opinion on plaintiff's mental functioning without evidence of testing or evaluations

19

performed by Dr. Frazier; and Dr. Frazier's conclusion about plaintiff's intellectual abilities was at odds with plaintiff's demonstrated adaptive functioning. (Tr. 23).

The ALJ's finding in this regard is supported by substantial evidence. The ALJ properly considered the regulatory factors in assessing Dr. Frazier's opinion on plaintiff's ability to function from a mental standpoint, including the absence of evidence showing Dr. Frazier's specialty, the lack of testing or mental evaluations to support his opinion that plaintiff was "mentally retarded," and the lack of a supporting explanation for his findings. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. The ALJ provided "good reasons" that are "sufficiently specific" to make clear to the Court the weight the ALJ gave the opinion of plaintiff's treating physician and the reasons for that weight. Social Security Ruling 96-2p; *see also Wilson,* 378 F.3d at 544. Plaintiff does not address the specific reasons posited by the ALJ for his decision, but argues that the records from Dr. Frazier have been consistent in his findings of a cognitive disorder. Yet, the fact that the record could support a contrary conclusion does not mean the ALJ's decision is not supported by substantial evidence. *See Collins v. Astrue,* 373 F. App'x 552, 556 (6th Cir. 2010) (court must defer to the agency "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ") (quoting *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)). Accordingly, plaintiff's assignment of error should be overruled.

**V. This matter should be reversed and remanded for further proceedings.**

This case involves both a Fourth Sentence and a Sixth Sentence remand under § 405(g). Under Sentence Four of § 405(g), the Court is authorized to enter "a judgment affirming,

20

modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." Here, a remand under Sentence Four is appropriate because "all of the essential factual issues have not yet been resolved." *Newkirk v. Shalala,* 25 F.3d 316, 318 (6th Cir. 1994); *Faucher v. Sec'y of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994).

In a Sentence Six remand, the Court does not rule on the correctness of the administrative decision as in a Sentence Four determination. *Faucher,* 17 F.3d at 174 (citing *Melkonyan v. Sullivan,* 501 U.S. 89 (1991)). Instead:

> [T]he court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding. The statute provides that following a sentence six remand, the Secretary must return to the district court to "file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based." 42 U.S.C. § 405(g).

*Melkonyan,* 501 U.S. at 98 (citations omitted). As discussed above, a Sixth Sentence remand is warranted to allow for consideration of the new evidence submitted by plaintiff and the impact on plaintiff's claim for disability.

Where a remand is warranted under both Sentence Four and Sentence Six, the Court may remand under both grounds. As explained by the Eleventh Circuit:

> To summarize, after reviewing § 405(g) and the applicable case law, . . . if both sentence-four and sentence-six grounds for remand exist in a disability case, the case may be remanded on both grounds. District court jurisdiction over the case continues after the entry of the remand judgment as a result of the sentence-six prong of the remand. If a claimant achieves a remand on both sentence-four and sentence-six grounds, and thereafter succeeds on remand in part due to the sentence-six ground, the claimant may return to district court to request entry of judgment after remand proceedings have been completed. In such a case, the claimant may wait until the post-remand judgment is entered before filing his EAJA application.

*Jackson v. Chater,* 99 F.3d 1086, 1097-98 (11th Cir. 1996).  Other courts have likewise

concluded that "dual basis" remands are appropriate in instances similar to the case at hand

pursuant to both Sentence Four and Sentence Six.  *See, e.g., Banik v. Comm'r of Soc. Sec.,* No.

1:11-cv-342, 2012 WL 2190816 (S.D. Ohio June 14, 2012), *adopted,* 2012 WL 2890890 (S.D.

Ohio July 16, 2012); *Bradley v. Barnhart,* 463 F. Supp.2d 577, 583 (S.D. W.Va. 2006).

   Accordingly, it is recommended that this matter be reversed and remanded for further

proceedings consistent with this decision under Sentence Four of Section 405(g) and under

Sentence Six of Section 405(g).

### IT IS THEREFORE RECOMMENDED THAT:

   1. The decision of the Commissioner be **REVERSED** and **REMANDED** for further
proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g); and

   2. This matter be **REMANDED** pursuant to Sentence Six of 42 U.S.C. § 405(g).


Date:   11/20/2014                        s/Karen L. Litkovitz
                                          Karen L. Litkovitz
                                          United States Magistrate Judge

page

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RICHARD DALE CRAWFORD,                                    Case No. 1:13-cv-451
         Plaintiff,                                            Dlott, J.
                                                               Litkovitz, M.J.
         vs.

COMMISSIONER OF
SOCIAL SECURITY,
         Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

23